UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------x
GEORGE HAWTHORNE,

                Plaintiff,

  -against-

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.
-------------------------------------------------x

**MEMORANDUM AND ORDER**

Case No. 1:20-cv-02247-FB

*Appearances*:
*For the Plaintiff*:
JONATHAN R. KLEE, ESQ.
Klee, Woolf, Goldman & Filpi, LLP
350 Willis Avenue,
Minneola NY 22502

*For the Defendant*:
MARK J. LESKO, ESQ.
Acting United States Attorney
Eastern District of New York
By: SARAH E. PRESTON, ESQ.
Special Assistant United States Attorney
271 Cadman Plaza East
Brooklyn, New York 11201

**BLOCK, Senior District Judge:**

    George Hawthorne seeks review of the Commissioner of Social Security's denial of his application for disability insurance benefits ("DIB"). Both parties move for judgment on the pleadings. For the following reasons, Hawthorne's motion is granted, the Commissioner's motion is denied, and this case is remanded.

## I.

    Hawthorne is 53 years old, has a fifth-grade education, and previously worked as a construction laborer. The alleged disability onset was July 10, 2013, and he was

1

last insured on December 31, 2014. He has suffered from lumbar spine impairment, lower extremity radiculopathy, hernia, emphysema, Human Immunodeficiency Virus ("HIV"), anxiety, and depression. The ALJ determined lumbar degenerative disc disease and HIV were the only severe impairments. Hawthorne was diagnosed with HIV in January 2012. On June 10, 2013, he was injured by a falling scaffold at work, resulting in neck, head, and shoulder injuries. On July 11, 2013, he fell off a ladder at work. Imaging and examinations showed disc herniation, disc protrusion, stenosis, arthrosis, lumbosacral radiculitis, lumbosacral spondylosis, and myalgia/myositis. Hawthorne was prescribed physical therapy, pain medication, hot compresses, electric stimulation, therapeutic exercises, and epidural injections.

Hawthorne filed for DIB on November 26, 2016. The SSA denied the claim on April 12, 2017. Hawthorne timely filed for a hearing on June 8, 2017. On December 10, 2018, a video hearing was held with Administrative Law Judge Charles Woode. ALJ Woode issued an unfavorable decision on January 29, 2019. Hawthorne appealed on March 14, 2019. The Appeals Council declined to review on March 24, 2020. This lawsuit followed.

## II.

"In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004);

*see also* 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," or "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013).

### IV.

While ALJ Woode found that Hawthorne was unable to perform his past relevant work, he concluded that his "statements about the intensity, persistence, and limiting effects of his symptoms [were] inconsistent with the evidence," R. at 17, and determined that Hawthorne could perform light work.[1] R. at 16. The vocational expert suggested order clerk, bagger, marker, sewing machine operator, addresser, or tube operator. R. at 58-60.

The ALJ erred by discounting Acarkan's subjective statements when determining Hawthorne's residual functional capacity. Hawthorne testified that he has trouble sitting, standing, and lifting, and that he is even unable to sleep or sweep due to his pain. R. at 16. His "current activities" are providing limited assistance with household chores—occasionally cooking, doing dishes, or taking out small bags of trash. R. at 16-17, 50. Despite Hawthorne's clear need for pain medication,

---

[1] Hawthorne had "the residual functional capacity to perform light work, [but only] occasionally stoop, kneel, crouch, crawl, climb ramps or stairs, and push or pull controls with the right lower extremity. He could not climb ladders, ropes, or scaffolds. He should avoid concentrated exposure to extreme cold, humidity, and pulmonary irritants. He should also avoid concentrated exposure to hazards such as unprotected heights and dangerous machinery. He would require the opportunity to sit for a minute or two after standing between 30 and 60 minutes." R. at 16.

participation in physical therapy, and repeated doctor's visits, ALJ Woode reasoned that his daily activities and delays in receiving certain treatment demonstrate that his symptoms were not severe, even suggesting the delays amounted to noncompliance. R. at 18. This Court disagrees. "Such [personal] activities do not by themselves contradict allegations of disability, as people should not be penalized for enduring the pain of their disability in order to care for themselves." *Woodford v. Apfel*, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000) (internal citations omitted). Further, Hawthorne explained that his worker's comp insurance would not cover some treatments with regularity. R. at 18. Inability to finance treatments certainly can explain why a treatment was delayed. In the meantime, Hawthorne received other treatments, such as physical therapy and pain medication. The ALJ must reconsider Hawthorne's testimony when determining the RFC.

The ALJ also erred when determining in step five that Hawthorne could have performed other jobs that existed in the national economy. R. at 19. The ALJ relied on the vocational expert's testimony.[2] However, courts have opined that simply stating that jobs exist is not substantial evidence, especially when the jobs are "plainly obsolete." *Zacharopoulos v. Saul*, 516 F. Supp. 3d 211, 223–24 (E.D.N.Y.

---

[2] The vocational expert reviewed exhibits 1E to 6E, which consisted of five filing documents containing basic information about the applicant—birthdate, social security number, and attorney's contact information, etc.—and the VE's own résumé. She did not review the remaining 600 pages of the record.

4

2021) ("If the only jobs that the applicant is physically and mentally capable of doing no longer exist in the American economy…the applicant is disabled from working, and likewise, as a realistic matter, if there is an insignificant number of such jobs.") (citing *Herrmann v. Colvin*, 772 F.3d 1110, 1113 (7th Cir. 2014)). This Court agrees. Some of the jobs suggested for Hawthorne, most egregiously pneumatic tube operator,[3] do not exist in the modern economy, while others—addresser,[4] marking clerk,[5] bagger,[6] and order clerk[7]—no longer exist as an isolated role, at least not in significant numbers. Modern jobs routinely combine such roles with other duties that require stooping, lifting, or standing for several hours. For example, jobs like stocking products at a grocery store (marking clerk) or a hostess or server at a

---

[3] "Receives and routes messages through pneumatic-tube system[;] Opens incoming pneumatic-tube carriers containing items, such as mail correspondence, bills, and receipts[;] Reads and sorts items according to department[;] Inserts items into carriers, and carriers into tube system, and routes to specified locations." D.O.T. 239.687-014.
[4] "Addresses by hand or typewriter, envelopes, cards, advertising literature, packages, and similar items for mailing. May sort mail." D.O.T. 209.587-010.
[5] "Marks and attaches price tickets to articles of merchandise to record price and identifying information[;] Ties, glues, sews, or staples price ticket to each article[;] Presses lever or plunger of mechanism that pins, pastes, ties, or staples ticket to article[;] May record number and types of articles marked and pack them in boxes[;] May compare printed price tickets with entries on purchase order to verify accuracy and notify supervisor of discrepancies." D.O.T. 209.587-034.
[6] "Covers garments or household articles with plastic or paper bags by any of [four] methods." D.O.T. 920.687-018.
[7] "Takes food and beverage orders over telephone or intercom system and records order on ticket[;] Records order and time received on ticket to ensure prompt service, using time-stamping device. Suggests menu items, and substitutions for items not available, and answers questions regarding food or service. Distributes order tickets or calls out order to kitchen employees. May collect charge vouchers and cash for service and keep record of transactions." D.O.T. 209.567-014.

restaurant (order clerk) require significant amounts of standing and/or lifting. If the jobs do not exist, Hawthorne is therefore disabled.

In addition, Hawthorne must be given the opportunity to rebut the vocational expert's findings. *Massimino v. Shalala*, 927 F. Supp. 139, 145 (S.D.N.Y. 1996) ("[T]he ALJ must give a claimant the opportunity to rebut the presumption that she could perform the jobs listed in the DOT. [T]he simple recitation of the titles and coded numbers in the Dictionary of Occupational Titles may not have been sufficient to give the applicant fair notice of the nature and requirements of these relatively unfamiliar jobs").

Finally, the ALJ should also consider whether Sec. 404.1562(a) would exempt Hawthorne at step five, as a person unable to adjust to other work.

## CONCLUSION

For the foregoing reasons, Hawthorne's motion is GRANTED, the Commissioner's motion is DENIED, and the case is REMANDED to the Commissioner for further proceedings consistent with this opinion.

**SO ORDERED.**

    __/S/ Frederic Block_____
    FREDERIC BLOCK
    Senior United States District Judge

Brooklyn, New York
September 24, 2021

6